**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| LAUREN KAUFMAN, et al., | : | CIVIL ACTION NO. 07-6160 (MLC) |
| Plaintiffs, | : | **MEMORANDUM OPINION** |
| v. | : | |
| ALLSTATE INSURANCE COMPANY, et al., | : | |
| Defendants. | : | |

**COOPER, District Judge**

The plaintiffs, individually and on behalf of others similarly situated, originally brought this action in New Jersey state court against Allstate Insurance Company ("Allstate"), Liberty Mutual Insurance Company ("Liberty Mutual"), GEICO Insurance Company ("GEICO"), First Trenton Indemnity Company, High Point Insurance Company, and New Jersey Manufacturers Insurance Company ("New Jersey Manufacturers"), seeking equitable relief and damages for the failure to provide insurance coverage for the "diminished value" of plaintiffs' vehicles resulting from their involvement in accidents.  (Dkt. entry no. 1, Rmv. Not., Ex. A, Compl. at 2.)  The only remaining defendants at this juncture are GEICO, Allstate New Jersey Insurance Company ("Allstate New Jersey)[1] and Liberty Mutual (collectively,

---

[1] Allstate New Jersey was substituted for Allstate in March 2008.  (Dkt. entry no. 68, 3-11-08 Stipulation & Order.)

"defendants"). This action was removed to this Court pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. §§ 1332(d), 1453 in December 2007. (Rmv. Not. at 1-2.) The plaintiffs moved to remand the action to New Jersey state court pursuant to CAFA's "local controversy" exception, 28 U.S.C. § 1332(d)(4)(A) in December 2007. (Dkt. entry no. 37, Pl. Br. at 1.) The Court granted this motion ("September Order"). (Dkt. entry no. 81, 9-10-08 Ord.; see dkt. entry no. 80, 9-10-08 Op.) The defendants were granted leave to appeal, and did so. (Dkt. entry nos. 83, 85, 86, 87.) The Third Circuit Court of Appeals ("Third Circuit") vacated the September Order in part and remanded the matter to this Court for further proceedings. (Dkt. entry no. 92, 3-26-09 Judgment.) The plaintiffs now move again to remand to New Jersey state court pursuant to the local controversy exception. (Dkt. entry no. 117, Motion to Remand.) The defendants oppose the motion. The Court heard oral argument on June 25, 2010. For the reasons stated herein, the Court will grant the motion.

## BACKGROUND

The plaintiffs' allegation is that (1) they own vehicles covered by insurance policies issued by defendants, (2) their vehicles have diminished value after being involved in accidents, (3) defendants failed to provide coverage for the diminished value of their vehicles, and (4) defendants' failure to provide

2

coverage for the diminished value violates both the insurance agreements and New Jersey law.  (Compl. at 2-4, 13.)

The plaintiffs moved to remand the action to state court under CAFA's local controversy exception.  (Pls. Br. at 1.) Liberty Mutual, GEICO, Allstate, and New Jersey Manufacturers opposed the motion, arguing that, inter alia, plaintiffs did not satisfy the local controversy exception because they did not show that (1) there was a New Jersey defendant from whom plaintiffs seek significant relief and whose conduct forms a significant basis for their claims, and (2) the principal injuries caused by defendants' conduct or any related conduct were incurred in New Jersey.  (Dkt. entry no. 51, Liberty Mutual First Br. at 5; dkt. entry no. 54, GEICO First Br. at 3-5; dkt. entry no. 50, Allstate Br. at 2.)

The Court granted the motion to remand.  (9-10-08 Op.)  It found that the local controversy exception applied to this matter because, inter alia, the plaintiffs demonstrated that a local defendant's conduct formed a significant basis for the claims asserted.  (Id. at 9.)  The Court found that New Jersey Manufacturers, a local defendant, issued over 780,000 policies in New Jersey, which was 100,000 more policies than its closest competitor.  (Id. at 11.)[2]  The Court stated that New Jersey

---

[2] The Court conducted the local controversy exception analysis using New Jersey Manufacturers as the local defendant. It noted, however, that the analysis would remain the same if it

Manufacturers thus issued substantially more insurance policies in New Jersey than the other defendants. (Id.) The Court found that the local defendant's percentage share of the automobile insurance market demonstrated that its conduct was significant. The Court also stated that New Jersey Manufacturers's status as the largest issuer of personal automobile insurance policies signified its importance. (Id.)

The defendants appealed from this order and the Third Circuit remanded the case to this Court to reconsider its significant basis analysis. Kaufman v. Allstate N. J. Ins. Co., 561 F.3d 144, 148 (3d Cir. 2009). The Third Circuit stated that the Court "erroneously relied on generic market share numbers instead of focusing on the conduct alleged in the complaint" when conducting the significant basis analysis. Id. The Third Circuit provided guidance to the Court as to how to properly evaluate this provision as outlined in the discussion section.

## DISCUSSION

**I. Legal Standards**

   **A. CAFA**

Federal courts have jurisdiction over any civil action in which (1) the amount in controversy exceeds $5,000,000, (2) at least one plaintiff and one defendant are citizens of different

---

conducted the analysis using Allstate New Jersey as the local defendant. Allstate New Jersey is the remaining local defendant.

states, and (3) the proposed plaintiff class has 100 or more members.  28 U.S.C. § 1332(d)(2), (5)(B).  The local controversy exception, however, requires that jurisdiction be declined where (1) more than two-thirds of the plaintiff class are citizens of the original forum state, (2) at least one defendant from whom significant relief is sought and whose alleged conduct forms a significant basis for plaintiffs' claims is a citizen of the original forum state, (3) the "principal injuries resulting from the alleged conduct or any related conduct of each defendant" occurred in the original forum state, and (4) "no other class action has been filed asserting the same or similar factual allegations against any of the defendants" on behalf of any person within the previous three years.  28 U.S.C. § 1332(d)(4)(A).  The local controversy exception identifies controversies that "uniquely affect[] a particular locality to the exclusion of all others."  Evans v. Walter Indus., Inc., 449 F.3d 1159, 1164 (11th Cir. 2006) (internal quotation and citation omitted).

    B.    **CAFA's Local Controversy Exception**

        1.    **Significant Basis**

The local controversy exception applies where, inter alia, a local defendant's alleged conduct forms a significant basis for the claims.  28 U.S.C. § 1332(d)(4)(A)(i)(II)(bb).  The inquiry into whether the local defendant's conduct forms a "significant

5

basis" for the claims centers on a comparison of the local defendant's alleged conduct with the other defendants' conduct. Joseph v. Unitrin, Inc., No. 08-77, 2008 WL 3822938, at *8 (E.D. Tex. Aug. 12, 2008); see also Evans, 449 F.3d at 1167 (determining whether local defendant's conduct formed a significant basis of plaintiff class's claims by evaluating defendant's role in causing the alleged injury in comparison with roles played by other defendants). A defendant is significant such that the conduct forms a significant basis for the claims where the defendant is more than trivial or of no importance. See Caruso v. Allstate Ins. Co., 469 F.Supp.2d 364, 369 (E.D. La. 2007); see also Joseph, 2008 WL 3822938, at *9.

### 2.  Third Circuit Guidance

The Third Circuit has provided additional guidance for the significant basis provision analysis. It noted that in conducting the local controversy exception analysis, the Court must only consider the defendants that are currently in the action. Kaufman, 561 F.3d at 153. It stated that the Court erred when it considered defendants that no longer remained in the action. Id. The Third Circuit stated that the significant basis provision does not require every member of the proposed class to assert a claim against the local defendant, but rather, that the local controversy exception requires that "at least 1 [local] defendant . . . whose alleged conduct forms a significant

6

basis for the claims asserted by the plaintiff class." Id. at 155. It stated that this "provision does not require that the local defendant's alleged conduct form a basis of each claim asserted; it requires the alleged conduct to form a significant basis of all the claims asserted." Id. The Third Circuit instructed that the Court must compare the local defendant's alleged conduct to the conduct of all the defendants. Id. at 156. "If the local defendant's alleged conduct is a significant part of the alleged conduct of all the Defendants, then the significant basis provision is satisfied." Id. The quantity of claims against the local defendant may provide useful information but is not dispositive in this analysis. Id. at 155-56.

The Third Circuit rejected this Court's significant basis analysis as it incorrectly focused on the number of automobile insurance policies Allstate New Jersey sold in New Jersey. Id. at 156. It stated that this Court erred by relying on the number of insurance policies sold and the percentage share of the market that number represented as a proxy for the alleged conduct of the defendants. The Third Circuit stated that this Court failed to consider whether some policies sold by the defendants did "provide diminished value coverage or whether the [d]efendants occasionally paid for diminished value claims, nor did it compare Allstate [New Jersey's] alleged conduct to the alleged conduct of all the [d]efendants." Id. at 157. It stated that by equating

Allstate New Jersey's conduct with the number of policies sold, the Court overstated its alleged conduct.  <u>Id.</u>

The Third Circuit instructed that this Court compare the alleged conduct of the local defendant to the conduct of the other defendants and determine whether it is significant, which means important or notable.  "The local defendant's alleged conduct must be an <u>important</u> ground for the asserted claims in view of the alleged conduct of all the [d]efendants."  <u>Id.</u> at 157.  The Third Circuit then provided guidance by suggesting nine areas of inquiry for determining whether the alleged conduct of the local defendant is significant.

> By way of example, the District Court could, on remand, inform its comparison of the local defendant's alleged conduct to the alleged conduct of all the [d]efendants by considering such possible areas of inquiry as: 1) the relative importance of each of the claims to the action; 2) the nature of the claims and issues raised against the local defendant; 3) the nature of the claims and issues raised against all the [d]efendants; 4) the number of claims that rely on the local defendant's alleged conduct; 5) the number of claims asserted; 6) the identity of the [d]efendants; 7) whether the [d]efendants are related; 8) the number of members of the putative classes asserting claims that rely on the local defendant's alleged conduct; and 9) the approximate number of members in the putative classes. Whether the District Court considers any or all of these factors, it must in every case still provide a reasoned analysis that focuses on the conduct of the [d]efendants -- local and non-local -- as alleged in the complaint.

<u>Id.</u> at 157 n.13.

**II.  Significant Basis Analysis**

The sole issue on remand is whether Allstate New Jersey's alleged conduct forms a significant basis for the claims

8

asserted.  We find that the plaintiffs have successfully demonstrated that Allstate New Jersey's alleged conduct does comprise a significant basis for the claims asserted.

The plaintiffs conducted discovery on the nine areas of inquiry suggested by the Third Circuit and contend that this discovery demonstrates that Allstate New Jersey's conduct formed a significant basis of the claims asserted when compared with the conduct of the other defendants.  (Dkt. entry no. 117, Pl. Second Br. at 6.)  They argue that they have asserted the same claims against all the defendants equally, and as such, it is apparent that Allstate New Jersey's conduct forms a significant basis for the relief sought.  (Id.)

The plaintiffs then address the number of class members asserting claims against Allstate New Jersey and the approximate number of members in the putative classes.  (Id. at 8.)  They contend that these two inquiries support remand.  (Id.)  The plaintiffs present the number of collision policies issued by each of the defendants to class members, whether any of these policies provide diminished value coverage, the number of collision claims submitted by class members to each defendant, and the number of collision claims submitted by class members to each defendant where diminished value damages were paid.  (Id. at 8.)  The plaintiffs argue that the number of class members asserting injunctive relief and damages claims against Allstate

9

New Jersey comprises nearly 20%[3] and over 44% of the claims against the other two defendants respectively.  (Id. at 8.)  They further present Allstate New Jersey's dollars in collision claims paid and the total premiums it received and demonstrate that these figures far exceed those of the other defendants.  They further state that through discovery, they found that no defendant provided diminished value coverage and no defendants paid any diminished value claims.  (Id. at 9-10.)  When compared to the other two remaining defendants, Allstate New Jersey's dollars in collision claims paid comprised 53% of the total dollars paid by the three defendants.  Further the amount of premiums it received was nearly double that of Geico.

     GEICO and Allstate New Jersey argue that Allstate New Jersey's alleged conduct does not form a significant basis for the claims asserted.  (Dkt. entry no. 122, GEICO Br. at 6.)  They contend that the claims against each of the three defendant insurers are all independent of one another and thus the claims brought against Allstate New Jersey cannot form a significant basis for the claims brought against the two remaining insurers.  (Id. at 9-10.)  They contend that the three insurers are separate, unrelated entities.  They emphasize that each claim is

---

[3] The defendants contend that the plaintiffs made an error with respect to the percentage of collision policies in force, and that Allstate New Jersey actually only comprises 13% of the collision policies in force in comparison with the other defendants.  (GEICO Br. at 16 n.4.)

10

only brought by each plaintiff against that plaintiff's specific insurer.  (Id. at 11.)

They further argue that the plaintiffs' analysis is flawed because it "does not say anything substantive about the importance of the relative conduct giving rise to the classes' claims because the classes' claims are not based on the insurers' combined conduct."  (Id. at 13.)  They contend that this action necessitates the creation of three putative classes divided by insurer.  (Id. at 14.)  They contend that after creating these separate classes, it is evident that the claims of class members who were insured by GEICO and Liberty Mutual do not rely on Allstate New Jersey's conduct at all.  (Id. at 15.)  They argue that the plaintiffs' comparison of the defendants' conduct is a "false comparison" because their claims are not based on the combined conduct of the defendants.  (Id. at 16.)  They further contend that the premiums received by the defendants "ha[ve] nothing to do with the conduct giving rise to the claims in this case" because there is no request for damages based on premiums.  (Id. at 18-19.)  They further state that the benefits paid is also not helpful when comparing the conduct of the defendants because the conduct at issue is the failure to pay benefits, and unrelated to the actual payment of benefits.  (Id. at 19.)

The plaintiffs contend that this argument, that there was no joint or combined conduct by the defendants, was the same

11

argument the defendants made that the Third Circuit rejected. (Dkt. entry no. 128, Reply Br. at 1-2.)  The plaintiffs note the Third Circuit's statement that the local controversy provision "does not require that the local defendant's alleged conduct form the basis of <u>each</u> claim asserted . . . but requires the alleged conduct to form a <u>significant</u> basis of all the claims asserted . . . a party's conduct may form a significant basis of an entire set of claims even if some claims within the set are not based on that conduct."  (<u>Id.</u> at 2.)  They argue that Allstate New Jersey's misconduct comprises a significant basis of the conduct at the heart of the claims.  (<u>Id.</u> at 3.)  They state that they have established that none of the defendants have ever made diminished value payments on collision claims, and that compared to the other defendants, Allstate New Jersey is responsible for 44% of all collision claims.  (<u>Id.</u> at 4.)  They state that it is thus clear that Allstate New Jersey's conduct forms a significant basis of the claims.

    The Court finds that the local controversy exception applies here.  The putative class consists of all persons insured by the defendants with policies issued in or delivered in the state of New Jersey and a sub-class of all persons insured or previously insured by the defendants who presented first-party physical damage claims for their insured vehicle and did not receive coverage or compensation for diminution of value of their

vehicles. (Compl. at 9-10.) The Court finds that Allstate New Jersey's conduct, when compared with the conduct of the other defendants comprises a significant basis of the relief sought.

The Court first notes that the Third Circuit has already rejected any argument by GEICO and Allstate New Jersey that Allstate New Jersey's conduct cannot comprise a significant basis of the claims because the defendants' conduct was not joint and because each plaintiff's claims are only against their individual insurers. The Third Circuit explicitly stated that the significant basis provision "does not require that the local defendant's alleged conduct form a basis of <u>each</u> claim asserted; it requires the alleged conduct to form a <u>significant basis</u> of all the claims asserted. While assessing the quantity of claims based on the local defendant's alleged conduct may be useful to the analysis, the significant basis provision does not establish an absolute quantitative requirement." <u>Kaufman</u>, 561 F.3d at 155-56.

The Third Circuit's guidance emphasizes a comparison of the remaining defendants' conduct. Such a comparison indicates that Allstate New Jersey's conduct formed a significant basis of the claims asserted. There are two types of claims asserted by the plaintiffs, claims for equitable relief for all those insured by the defendants and claims for damages for all those who received damages claims not providing diminished value compensation from

the defendants. (Compl. at 4-5.) Comparing the number of the defendants' current insurance policies in force, i.e., the policies forming the basis for equitable relief, Allstate New Jersey's policies indisputably form at least 13% of these policies. Comparing the number of the defendants' collision claims closed with payments, i.e., those claims forming the basis of the damages claims, Allstate New Jersey claims comprise 44% of all claims paid out by the defendants. The plaintiffs showed that no defendants provided diminished value payments on collision claims. Allstate New Jersey's conduct thus comprises an "important ground for the asserted claims," and its conduct was significant in comparison with the other remaining defendants.

**III. Fraudulent Misjoinder**

Liberty Mutual argues that the plaintiffs have fraudulently misjoined their claims against Allstate New Jersey with those against Liberty Mutual. (Dkt. entry no. 121, Liberty Br. at 1.) It requests that Court sever the claims against the diverse defendants and remand the claims against the non-diverse defendants under the fraudulent misjoinder doctrine propounded by the Eleventh Circuit's Tapscott v. MS Dealer Serv. Corp., 77 F.3d 1353 (11th Cir. 1996). It contends that here, as in Tapscott, multiple unrelated plaintiffs have joined unrelated claims against unrelated defendants in an attempt to avoid a federal

forum.  (Id. at 6.)  It contends that the joinder here is improper because the claims do not arise out of the same transaction or occurrence, and that no common question of law or fact common to all plaintiffs will arise in the action.  (Id. at 8.)  It contends that the claims here all arise from separate transactions and facts.  (Id.)

The Third Circuit did not address the fraudulent misjoinder argument in Kaufman, and stated "[h]ere we are not deciding the question of whether [p]laintiffs have properly joined [d]efendants.  Moreover, a ruling that the significant basis requirement is satisfied does not imply that the Defendants are properly joined.  Defendants' joinder may be resolved independently by the court, state or federal, properly exercising jurisdiction."  561 F.3d at 156 n.11.

The doctrine of fraudulent misjoinder was created in Tapscott.  This doctrine addresses the whether the "joined claims are unrelated and have been improperly joined to destroy diversity."  Asher v. Minn. Mining & Mfg. Co., No. 04-522, 2005 WL 1593941, at *4 (E.D. Ky. June 30, 2005).  "[W]ith fraudulent misjoinder, the charge is that the joined claims are unrelated and have been improperly joined in one action to destroy diversity."  Geffen v. Gen. Elec. Co., 575 F.Supp.2d 865, 869 (N.D. Ohio 2008).

15

Courts have been reluctant to adopt the Tapscott fraudulent misjoinder doctrine; the Eleventh Circuit is the only circuit to explicitly adopt this fraudulent misjoinder doctrine, and it has not been addressed by the United States Supreme Court. See Lavalier v. Cinnabar Serv. Co., No. 10-0005, 2010 WL 1386,900, at *9 (N.D. Okla. Apr. 13, 2010); Bancroft v. Bayer corp., No. 09-787, 2009 WL 3156706, at *3 (S.D. Ill. Sept. 29, 2009); Thakor v. Burlington Ins. Co., No. 09-1465, 2009 WL 1974511, at *4 (N.D. Cal. July 8, 2009). Many courts have rejected the doctrine in its entirety. See Geffen, 575 F.Supp.2d at 870 ("[A] number of [district courts] . . . declined to apply-or outright rejected-the fraudulent misjoinder doctrine."). The "Third Circuit has not stated its view on whether and how district courts should recognize and treat [Tapscott misjoinder]." In re Avandia Mktg., Sales Practices & Prods. Liab. Litig., 624 F.Supp.2d 396, 413 n.46 (E.D. Pa. 2009).

Many courts decline to apply Tapscott because the doctrine lacks clarity regarding its application. "[C]ourts have recognized that the governing legal standards regarding the fraudulent misjoinder doctrine are far from clear." Asher, 2005 WL 1593941, at *5 (citation omitted). "[E]normous judicial confusion [has been] engendered by the [fraudulent misjoinder] doctrine." Rutherford v. Merck & Co., 428 F.Supp.2d 842, 852 (S.D. Ill. 2010). "Federal courts . . . have not given the

16

doctrine a ringing endorsement." Palmer v. Davol, Inc., No. 08-2499, 2008 WL 5377991, at *3 (D.R.I. Dec. 23, 2008). Some courts have found this doctrine to be an unconstitutional creation of common law. See Bancroft, 2009 WL 3156706, at *4 ("It is the Court's view, however, that the judicially-created fraudulent misjoinder doctrine is an exercise of federal common law-making power that is well outside the constitutional structures on such law-making.").

Noting the confusion and uncertainty around this doctrine, many courts have determined that the state court is the better court to determine whether any claims have been misjoined. See Rutherford, 428 F.Supp.2d at 851 ("[T]he Court declines to follow Tapscott. In the Court's view, whether viable state-law claims have been misjoined-even 'egregiously' misjoined- is a matter to be resolved by a state court."); see also Wolf v. Kennelly, 540 F.Supp.2d 955, 963 (N.D. Ill. 2008) ("[I]n any event, it is the state court, and not this court who could determine whether procedural misjoinder exists."); Geffen, 575 F.Supp.2d at 871 ("[T]he better course of action is for the state court to rule on the propriety of joinder under the state's joinder law in the first instance."); Asher, 2005 WL 1593941, at *5 (citing Osborn v. Metro. Life Ins. Co., 341 F.Supp.2d 1123, 1127 (E.D. Cal. 2004) ("Some courts have declined to enter into the confusion and complexity of fraudulent misjoinder and have concluded that a

defendant should 'resolve the claimed misjoinder in state court, and then, if that court severed the case and diversity then existed, it could seek removal of the cause to federal court.'").

The Court, without guidance from the Third Circuit, and noting other district courts' reluctance to embrace the Tapscott doctrine finds that this issue would be better decided in state court, the court in which the parties were originally joined. See Palmer, 2008 WL 5377991, at *4 ("Without direction from the First Circuit, and in light of the rule of strict construction of the removal statute coupled with a significantly unsettled landscape surrounding application of the doctrine in federal courts, this Court declines to adopt a doctrine that will further complicate the question of removal and federal jurisdiction.")

**CONCLUSION**

The Court, for the reasons stated supra, will grant the motion. The Court will issue an appropriate order.

>   s/ Mary L. Cooper
>   **MARY L. COOPER**
>   United States District Judge

Dated:   June 30, 2010

18